IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

1. VONNIE JONES, d/b/a VONNIE'S )
   PAWN, a Sole Proprietorship, )
   )
                        Plaintiff, )
   )
vs. ) Civil Action No. 20-cv-305-KEW
   )
1. THE CITY OF STILWELL, ) DEMAND FOR JURY TRIAL
   OKLAHOMA, )
2. JEAN ANN WRIGHT, MAYOR )
   for the City of Stilwell, Oklahoma, )
   )
                        Defendants. )

## VERIFIED COMPLAINT

The Plaintiff, Vonnie Jones, d/b/a Vonnie's Pawn, by and through his attorneys, LKDLAW, P.C., by Laurence K. Donahoe and CONRADY LAW, PLLC, by James A. Conrady for his causes of action and claims for relief against the above-named Defendants makes the following statements and allegations:

### PARTIES

1. The Plaintiff, Vonnie Jones d/b/a Vonnie's Pawn (hereinafter "Vonnie's Pawn" or "Plaintiff"), conducts business as Vonnie's Pawn, located at 101 W. Walnut St., Stilwell, OK 74960, in the County of Adair, State of Oklahoma. Vonnie's Pawn is properly licensed by the Oklahoma Department of Consumer Credit (hereinafter "ODCC"), and is authorized to buy, pawn and sell items sold or pledged to the pawnshop. As a pawnshop subject to the regulation of ODCC, upon the receipt of property obtained

by purchase or pledge, Vonnie's Pawn is vested with a legally protected property interest in that property.

2. The Defendant, City of Stilwell, is a municipality located in Adair County, Oklahoma.

3. The Defendant, Jean Ann Wright, is the duly elected Mayor for the City of Stilwell, Oklahoma.

## JURISDICTION AND VENUE

4. This action arises under the United States Constitution, particularly under the provisions of the Fourteenth (14th) Amendment and the Due Process Clause of the Fifth (5th) Amendment, and under the laws of the United States, particularly under the Civil Rights Act, 42 U.S.C. § 1983, and under Rule 57 (Declaratory Judgment) and Rule 65 (Injunctions and Restraining Orders) of the Federal Rules of Civil Procedures, as well as applicable State Statutes including Title 59 O.S. § 1501 et. seq., known as the Oklahoma Pawnshop Act.

5. This Honorable Court has jurisdiction under 28 U.S.C. § 1343, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, in that the claims are interrelated and arise out of the same conduct and occurrences.

6. Venue is proper before this Court pursuant to 28 U.S.C. § 1391, in that all Defendants reside within the State of Oklahoma and one or more live in this District, and all of the events and actions by the Defendants giving rise to Plaintiff's claims arose

within this District.

## FACTUAL STATEMENTS

7. At all times material to this Complaint, the Defendants, and each of them, were acting under color of law and were implementing state and/or municipal law and/or official policy or custom of the City of Stilwell, State of Oklahoma.

8. On October 5, 1970, the City of Stilwell enacted Ordinance No. 71, which requires that any pawnbroker in the City obtain a license with a yearly fee of $50.00, in violation of the Oklahoma Pawnshop Act, 59 O.S. § 1501 et. seq.

9. Ordinance No. 71 also requires a bond in the amount of $2,000, a register, and other violations of the Oklahoma Pawnshop Act.

10. Vonnie's Pawn has been in business since 1972, and has paid the yearly licensing fee of $50.00 since that time.

11. Vonnie's Pawn includes both a pawnshop and a check cashing business.

12. On or about March 24, 2020, Governor Stitt issued a declaration shutting down all "non-essential businesses" in the State of Oklahoma due to the Covid-19 pandemic.

13. On March 26, 2020, Defendant Wright, the Mayor of Stilwell, had the Police Chief deliver a letter informing Vonnie's Pawn that he could no longer operate his pawnshop or check cashing business. The only business he could conduct was selling guns and ammunition. This was based on Governor Stitt's closing of all non-essential

businesses due to Covid-19. This letter included a warning that violating this closing would result in six (6) months in jail and a fine of $3,000.

14. Mayor Wright closed Vonnie's Pawnshop despite the fact that pawnshops and check cashing businesses are both essential businesses.

15. This action by Defendants ruined the business of Vonnie's Pawn, as there was another pawnshop right outside of Stilwell city limits that was able to stay open. His business went to the other pawnshop, causing him lost income and customers.

16. Upon information and belief and to the best of Plaintiff's knowledge, Vonnie's Pawn was the only pawnshop in Oklahoma that was forced to close during the pandemic.

## CAUSE OF ACTION NUMBER ONE
### VIOLATION OF § 1983 RIGHTS BY CLOSING AN ESSENTIAL BUSINESS DURING PANDEMIC WITHOUT AUTHORITY OR DUE PROCESS

Plaintiffs re-allege the allegations contained in numerical paragraphs one through sixteen (1-16) as though the same were set forth herein.

17. The Plaintiff has protected property rights and interests by virtue of the 5th and 14th Amendments to the United States Constitution. Each and all of the acts alleged herein were done by the Defendants, and each of them, individually and under color of law, and did deprive the Plaintiff of his rights as guaranteed by the United States Constitution and Article 2, Section 30 of the Constitution of the State of Oklahoma.

18. Vonnie's Pawn operates as a pawnshop and a check cashing business.

19. On March 19, 2020, the United States Department of Homeland Security List of Essential Industries (hereinafter "USDHS") listed the following in relevant part for financial services:

> "Workers who are needed **to provide consumer access to banking and lending services**, including ATMs, and to move currency and payments (e.g., armored cash carriers)." (emphasis added).

20. The term "Essential Critical Infrastructure Workforce" for the financial services sector was further defined by a United States Treasury Department Memo dated March 22, 2020 as follows:

> "**workers who are needed to process and maintain systems for processing financial transactions and services**, such as payment, clearing and settlement services, wholesale financial transactions and services, such as payment, clearing and settlement services, wholesale funding, insurance services, and capital markets, activities; **to provide consumer access to banking and lending services**, including ATMS, movement of currency (e.g. armored cash carriers); support financial operations, such as those staffing data and security operations centers; and, **key third party providers who deliver core services. These individuals are critical to maintaining safe and efficient financial services and ensuring citizens have access to these services that are necessary to conduct their daily lives.**" (emphasis added).

21. On March 25, 2020, Governor Stitt issued Amended Executive Memorandum 2020-01, in which **he added to the list of critical infrastructure sectors identified by the USDHS**. Significantly under Financial Services, he listed the broad category of "Finance and Insurance," showing a clear intent to include all financial businesses as essential business, and thus exempt from his closing order.

22. Despite this clear mandate that the "finance" sector was essential from Governor Stitt, and further guidance from USDHS and the United States Treasury Department that "lending services" and people who "process financial transactions" are essential, Defendants shut down the pawnshop and check cashing business, allowing Vonnie's Pawn to only sell guns and ammunition.

23. Vonnie's Pawnshop should have been allowed to stay open to conduct all of its activities, including its pawnshop activities and its check cashing activities, as both of these fall within the definition of Essential Critical Infrastructure Workforce for the financial sector, and also fall within the broad definition of "finance" listed by Governor Stitt.

24. Pawnshops are "lending services" of last resort for people of limited resources who cannot obtain loans by any other means. To close pawnshops in this time of economic downturn would have a significant deleterious effect on the most financially challenged people in Stillwell.

25. Similarly, the check cashing portion of Vonnie's Pawn is often utilized by people who cannot get their checks cashed in any other way, and usually do not have bank accounts, and are therefore needed for "processing financial transactions." To close this business during the pandemic had a significant economic impact on the people who can least afford to be without this service.

26. Both the check cashing business and the pawnshop were "critical to maintaining safe and efficient financial services and ensuring citizens have access to

these services that are necessary to conduct their daily lives," and were therefore essential businesses that should have stayed open under the U.S. Department of the Treasury guidelines.

27.     Further, the order allowed Vonnie's Pawn to stay open to sell guns and ammunition, but prohibited Plaintiff from operating the rest of his business. Thus, the employees still had to be in the building, and Vonnie's Pawn still had customers in the building. This decision was irrational, and arbitrary and capricious. The result of the Mayor's actions were meaningless toward helping slow the spread of Covid-19.

28.     The decision to close the pawnshop and check cashing business without any authority from Governor Stitt's Emergency Order or based on any action by Vonnie's Pawn that violated the Oklahoma Pawnshop Act, violated Plaintiff's due process rights under the Fifth (5th) Amendment. Because Plaintiff was operating an essential business, the emergency order did not apply to him. His license can only be revoked and/or his business closed in compliance with the Oklahoma Pawnshop Act, which requires notice and a hearing by the Administrator. 59 O.S. § 1507.

29.     The decision to close the pawnshop and check cashing aspects of the business ruined Vonnie's Pawn. There was another pawnshop just outside of Stilwell city limits that was not subject to this arbitrary and capricious rule and was able to continue operating. The majority of Vonnie's business went to the pawnshop outside of the city limits.

30.     As a direct result of this wrongful and unconstitutional decision to close an

essential business, and arbitrary and capricious decision, Vonnie's Pawn has suffered damages of lost income and lost customers.

## CAUSE OF ACTION NUMBER TWO
## VIOLATIONS OF THE OKLAHOMA PAWNSHOP ACT

Plaintiffs re-allege the allegations contained in numerical paragraphs one through thirty (1-30) as though the same were set forth herein.

31. On October 5, 1970, the City of Stilwell passed City Ordinance Number 71 regarding pawnshops.

32. This Ordinance, as a whole, conflicts with the Oklahoma Pawnshop Act, 59 O.S. § 1501, et. seq., and is therefore null and void.

33. A general preemption provision exists in 59 O.S. § 1514, which states:

> Municipalities may enact ordinances which are in compliance with **but not more restrictive than the provisions of the Oklahoma Pawnshop Act**, Section 1501 et. seq of Title 59 of the Oklahoma Statutes. **Any existing** or future order, ordinance or regulation **which conflicts with this provision shall be null and void**. (emphasis added).

34. Regardless of whether this Ordinance was valid when it was enacted, it has been null and void since November 1, 1988, when Title 59 O.S. § 1514 was enacted.

35. Each subsection of this ordinance is invalid, as will be demonstrated below, but even if this Court should find that some sections of the statute survive, they are not severable, and the entire Ordinance should be declared null and void.

36. Section 1 of the Stilwell Ordinance No. 71 provides for a definition of a pawnbroker as follows:

> "Any person who loans money on deposit of personal property; or who deals in the purchase of personal property on condition of selling same back again at a stipulated price; or who makes a public display at his place of business of the sign generally used by pawnbrokers to denote their business, to wit: three gilt or yellow balls, or who publicly exhibits any sign of money to loan on a pledge of personal property is hereby declared to be a pawnbroker."

37. However, the term "pawnbroker" is already defined by the Oklahoma Pawnshop Act in Section 1502(3) as "a person engaged in the business of making pawn transactions." A "pawn transaction" is then defined as "the act of lending money on the security of pledged goods or the act of purchasing tangible personal property on condition that it may be redeemed or repurchased by the seller for a fixed price within a fixed period of time."  59 O.S. § 1502(6).

38. The definition in the Stilwell City Ordinance is more restrictive as to what constitutes a pawnbroker, and is therefore null and void pursuant to Section 1514.

39. Section 2 of the Stilwell Ordinance No. 71 provides:

> "No person shall carry on or engage in the business of a pawnbroker in this City without having first obtained a license therefore from the City.  For the purpose of defraying the expense of the supervision and licensing of pawnbrokers, a fee of $50.00 shall be charged and collected upon the issuance of each license."

40. The area of licensing has been specifically preempted by the Oklahoma Pawnshop Act. Title 59 O.S. § 1506(C) provides for licensing by the Administrator, and an annual fee must be paid to the Administrator. Significantly, subsection (D), which was first enacted in 1972 provides:

> **"No licensing requirement or license fee shall be required, levied or collected by any municipal corporation of this state**; provided that municipal corporations may require the payment of regulatory fees not in excess of Fifty Dollars ($50.00) per annum." (emphasis added).[1]

41. Thus, Section 2 of Stilwell Ordinance No. 71 is invalid because it seeks to impose a "licensing requirement." In addition, the City of Stilwell Ordinance clearly states the $50.00 fee is to defray the cost of issuing the license, and is therefore a licensing fee instead of a regulatory fee. This is expressly prohibited under 59 O.S. § 1506(D),

42. This violation of the Oklahoma Pawnshop Act has caused damages to Vonnie's Pawn since 1972 in excess of $2,350.00 for the licensing fees that he paid on a yearly basis to the City of Stilwell, and he is entitled to a return of this money in damages.

43. Section 3 of the Stilwell Ordinance No. 71 provides in relevant part:

> "Every person applying for a license to engage in or carry on a business of pawnbroker shall, before such license is issued to him, enter into bond to the City of Stilwell with some surety company, or with two or more good and sufficient sureties, residents of the City, in a penal sum of two thousand ($2,000.00) dollars . . ."

44. As previously stated, the City of Stilwell does not have the right to issue a license, and thus does not have a right to require a bond prior to receipt of such license.

45. In addition, Section 1504 of the Oklahoma Pawnshop Act requires a bond of $5,000.00 for each license. This shows that the Oklahoma Legislature intended to

---

[1] The initial 1972 statute had additional verbiage that does not effect this analysis. However, the quoted language has been in the statute since 1972.

preempt this area. Requiring another $2,000 bond in addition to the one required by the Administrator is more restrictive than the Oklahoma Pawnshop Act, and this provision is therefore null and void.

46. Section 4 of the Stilwell Ordinance No. 71 requires the following:

> "Every pawnbroker shall keep at his place of business a register in which he shall enter in writing a minute description of all property taken, purchased or received as aforesaid, including all identification numbers that may be in our [sic] upon any article, together with the time said property is received and the name, age, nationality, color and place of residence and street number, if within the City, of the person leaving the property, and also the amount loaned and the time when the loan falls due. The register shall be kept clean and legible. He shall make such entries at the time of the receipt of all property. Every entry shall be made in ink and shall not, in any manner, be erased, obliterated or defaced."

47. By contrast, the Oklahoma Pawnshop Act, Section 1515 provides in relevant part:

> "A. Any pawnbroker **shall make available a copy or report within two (2) days of any buy or pawn transaction** to the local law enforcement agency of the municipality or other political subdivision in which the pawnshop is located; provided, merchandise bought on invoice from a manufacturer or wholesaler with an established place of business is exempt from this reporting requirement. However, such invoice shall be shown upon request to the Administrator or his duly authorized representative or any authorized peace officer. The pawnbroker may provide the transaction report to the local law enforcement agency by either electronically reporting the information in the transaction report to an electronic database accessible only by law enforcement agencies or by reporting a physical copy of the transaction report directly to the law enforcement agency. The transaction report shall include:
> 1. The name and address of the pawnshop;
> 2. The name, address, race, sex, weight, height, date of birth and either identification number of the seller or pledger as verified by either a

state-issued identification card, driver's license or federal
government-issued identification card or by readable fingerprint of right or
left index finger on the back of the pawn or buy transaction copy to be
retained for the pawnbroker's record;
3. The transaction number for the buy or pawn transaction;
4. The date and time of the transaction;
5. The manufacturer of the item;
6. A description of the item; and
7. The serial number and model number where available and any other
identifying markings. . ." (emphasis added)

48. This detailed Section shows a clear intention by the Legislature to preempt this area. The register required by Ordinance No. 71 is clearly more restrictive than the "make available" requirement in the Oklahoma Pawnshop Act, which does not require keeping a register, and this Section is therefore null and void.

49. Section 5 of the Stilwell Ordinance No. 71 requires that:

"**The register shall, at all times**, be kept open to the inspection of
the Chief of Police and the Sheriff of Adair County, or his deputy, or
any officer of the police force of this City, the City Attorney of this
City, and the District Attorney of Adair County, and anyone
authorized in writing for that purpose by the Chief of Police, which
authority shall be exhibited to any such person or officer for
inspection of any article purchased, taken or received by him."
(emphasis added).

50. As stated previously, no register is required by the Oklahoma Pawnshop Act, making this Section null and void. In addition, Section 1508(A) of the Oklahoma Pawnshop Act provides in relevant part:

"At such times as the Administrator of Consumer Credit may deem
necessary, the Administrator or a duly authorized representative of
the Administrator may make an examination of the place of business
of each licensee and may inquire into and examine the transactions,
books, accounts, papers, correspondence and records of such

licensee insofar as they pertain to the business regulated by the Oklahoma Pawnshop Act. Such books, accounts, papers, correspondence, records and property taken, purchased or received shall also be open for inspection **at any reasonable time** to federal law enforcement officials and the chief of police, district attorney, sheriff or written designee of the law enforcement body in whose jurisdiction the pawnshop is located, without any need of judicial writ or other process. In the course of an examination, the Administrator or duly authorized representative or any authorized peace officer shall have free access to the office, place of business, files, safes and vaults of such licensee, and shall have the right to make copies of any books, accounts, papers, correspondence and records insofar as they pertain to the business regulated by the Oklahoma Pawnshop Act. The Administrator or duly authorized representative may, during the course of such examination, administer oaths and examine any person under oath upon any subject pertinent to any matter about which the Administrator is authorized or required by the Oklahoma Pawnshop Act to consider, investigate or secure information. . ." (emphasis added).

51. Section 5 is more restrictive than the Oklahoma Pawnshop Act in that it requires a register, and because it requires that it be available at all times instead of just at any reasonable time, and is therefore null and void.

52. Section 6 of the Stilwell Ordinance No. 71 provides:

"No pawnbroker shall purchase, take or receive any pledge or deposit of any article of property from a minor, or any stolen property, or property which, from any cause, he may have reason to believe or suspect cannot be lawfully or rightfully sold, pawned or pledged by the person offering it."

53. The Oklahoma Pawnshop Act in Section 1511 discusses prohibited practices by pawnbrokers, and it does prohibit accepting a pledge or purchasing property from a minor. 59 O.S. § 1511(C)(1).

54. However, there is no prohibition in the Oklahoma Pawnshop Act against the

remainder of this Section of Ordinance No. 71, and it is therefore null and void because it is more restrictive than the Act. The fact that the Legislature listed prohibited acts shows an intent to preempt this area.

55. Section 7 of the Stilwell Ordinance No. 71 provides:

> "A license is hereby required of every pawnbroker for each place where such business is transacted. It is unlawful for anyone to act as agent or solicit for any pawnbroker while such pawnbroker is engaged in such business at a place other than that specified in said license."

56. The corresponding section of the Oklahoma Pawnshop Act is Section 1503, which provides:

> "No person shall engage in business as a pawnbroker without first obtaining a license from the administrator specifically authorizing engagement in such business."

57. Ordinance No. 71, Section 7 is more restrictive than the Oklahoma Pawnshop Act and is therefore null and void.

58. Section 8 of the Stilwell Ordinance No. 71 provides:

> "If any pawnbroker, or his agent, servant or employee, with his knowledge, shall violate any of the provisions of this article or any of the statutes of the State of Oklahoma and be finally convicted in any court of record in this City or State or in the police court of the City of Stilwell, Oklahoma, or becomes a person of bad moral character in the conduct of a pawnbroker's business, it shall be sufficient to authorize the Mayor of the City of Stilwell, Oklahoma, to revoke his license and sufficient grounds for the refusal to issue a new license."

59. As stated previously, the Oklahoma Pawnshop Act does not allow any municipality to license pawnbrokers. 59 O.S. § 1506(D). Thus, this Section of the

Ordinance allowing the City to revoke the license or refuse to renew that license is null and void under this provision.

60. In addition, Section 1507 preempts the area of the revocation of licenses. It provides in relevant part:

> "**The Administrator may, after notice and hearing, decline to renew a license, suspend or revoke any license**, or in addition to or in lieu of suspension or revocation, order refunds for an unlawful charges or enter a cease and desist order if the Administrator finds that:
> . . .
> 2. The licensee, either knowingly or without the exercise of due care to prevent the same, has violated any provision of the Oklahoma Pawnshop Act or any rule or order lawfully made pursuant to and within the authority of the Oklahoma Pawnshop Act. . ." (emphasis added).

61. Section 8 of the Stilwell Ordinance No. 71 is more restrictive than the Oklahoma Pawnshop Act, and is therefore null and void.

62. Section 9 of the Stilwell Ordinance No. 71 provides only that an emergency exists and that the Ordinance is in full force and effect immediately. This section cannot stand by itself.

63. The Sections of the Stilwell Ordinance No. 71 are interrelated and are not severable. The determination that one or more of the Sections are null and void should result in a determination that the Ordinance as a whole is null and void.

64. Vonnie's Pawn is entitled to a Declaratory Judgment that the Stilwell Ordinance No. 71 is null and void, and for this Court to issue a Permanent Injunction against its enforcement. In addition, Plaintiff is entitled to damages in the amount of the

licensing fees he has paid since 1972, when Section 1506(D) prohibiting municipalities to license pawnshops was first enacted and when Plaintiff was first licensed.

## REQUESTED RELIEF

WHEREFORE, premises considered, Plaintiff prays for declaratory, injunctive relief and damages as follows:

    a.    Declaratory Judgment finding that a pawnshop and a check cashing business are both essential businesses, and the acts of the Defendants, and each of them, of closing Vonnie's Pawn without authority was unconstitutional and a violation of the Oklahoma Pawnshop Act.

    b.    Injunctive Relief preventing the Defendants from closing Vonnie's Pawn in the future, because it is an essential business.

    c.    An award of damages for lost income and customers from the unconstitutional closing of Vonnie's Pawn.

    d.    Declaratory Judgment finding that the actions of the Defendants, and each of them, in enacting and implementing Stilwell Ordinance No 71 are in non-compliance with, and more restrictive than the provisions authorized by Oklahoma Pawnshop Act, Title 59 O.S. § 1501 et. seq., and that Stilwell Ordinance No. 71, in its entirety, is null and void.

    e.    An injunction enjoining the Defendants City of Stilwell et al., from implementing and enforcing Ordinance No. 71 within the city limits of the City of Stilwell.

f. An award of at least $2,350 for damages for unauthorized licensing fees, which was required by the City and paid by the Plaintiff, since 1972.

g. An award of attorney's fees, costs, and such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby makes demand for trial by jury.

Dated this 4th day of September, 2020.

Respectfully Submitted,
LKDLAW, P.C.

/s/ Laurence K. Donahoe
Laurence K. Donahoe, OBA # 2414
P.O. Box 31375
Edmond, OK  73003-0023
Phone: (405) 282-1225
Fax: (405) 282-1298
Email: LkdLaw@me.com
ATTORNEY FOR PLAINTIFF

and

James A. Conrady, OBA # 1853
CONRADY LAW, PLLC
6 Pecan Drive
Stillwater, OK 74075
Phone: (832) 330-5620
Email: jconrady@hotmail.com
Co-Counsel for the Plaintiff

## VERIFICATION

State of Oklahoma,   )
                     ) ss:
County of Adair,     )

Vonnie Jones, of lawful age and being first duly sworn upon oath, states: I am Vonnie Jones, Plaintiff above named. I have read the foregoing instrument and state that all statements contained therein are true and correct according to my best information and belief.

_____
Vonnie Jones, Plaintiff

Subscribed and sworn to before me on August 27, 2020, by Vonnie Jones, Plaintiff above named.

My Commission Expires:
11-27-23
Comm. # 19011962

_____
Notary Public

